UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUSAN A. BROOKS,

                            Plaintiff,

                                                      **REPORT AND**
                                                      **RECOMMENDATION**

v.                                                    16-CV-0372(LJV)(JJM)

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                            Defendant.[1]
_____


          This is an action brought pursuant to 42 U.S.C. §405(g) to review the final

determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that

plaintiff was not entitled to Disability Insurance Benefits ("DIB").  Before me are the parties'

cross-motions for judgment on the pleadings [10, 12], [2] which have been referred to me for the

preparation of a Report and Recommendation [6].  Having reviewed the parties' submissions

[10, 12], I recommend that this case be remanded to the Acting Commissioner for further

proceedings.


                            **BACKGROUND**

          On or about April 17, 2013, plaintiff, who was 53 years old, filed an application

for DIB, alleging a disability onset date of September 8, 2011. Administrative record [5], pp.

_____

[1]        Since Nancy A. Berryhill is now the Acting Commissioner of Social Security, she is substituted
for Carolyn W. Colvin as the defendant in this action pursuant to Fed. R. Civ. P. ("Rule") 25(d).  *See*
Quintana v. Berryhill, 2017 WL 491657, *7 n. 1 (W.D.N.Y. 2017).

[2]        Bracketed references are to the CM/ECF docket entries.

121-29.  Her alleged disabilities included lupus, fibromyalgia, and chronic fatigue.  Id., p. 154.

She worked as an elementary teacher in a public school from 1990 to September 2012, when she

ceased working because of her condition.  Id., pp. 154-55.  The New York State Teacher's

Retirement System determined in December 2013 that plaintiff qualified for disability

retirement.  Id., pp. 24, 37.

        Plaintiff treated regularly with John Stubenbord, M.D., an internist, from 1998 to

2014.  [5], pp. 222-26, 256.  In April 2012 he completed a New York State Teacher's Retirement

System medical form, stating that plaintiff became disabled in September 2011 from chronic

fatigue, fibromyalgia, and lupus.  Id., p. 256. In September 2013 and December 2014, Dr.

Stubenbord submitted letters in support of plaintiff's disability claim, in which he stated that her

current diagnoses were chronic fatigue, fibromyalgia, and an autoimmune disorder.  Id., pp. 251,

255. He opined that although "[s]ome of [plaintiff's] medical problems cannot be assessed by

clinical means", she was "medically and psychologically . . . unable to perform any job".  Id.  Dr.

Stubenbord also described the various treatments administered and explained that "[o]ver the past

several years constant muscle and bone pain and weakness . . . . [plaintiff] has been unable to

function as a teacher because of these health problems.  The patient's stamina has not been

consistently sufficient to perform her teaching duties."  Id., p. 257.

        Plaintiff was seen by Sunita Chadha, M.D., a rheumatologist, on December 7, 2011

for chronic musculoskeletal pain and fatigue, which had progressively increased over the previous

five months.  Id., p. 201.  Plaintiff described her symptoms as "usually wax[ing] and wan[ing]".

Id.  At that time, his physical examination of plaintiff's musculoskeletal system  revealed "no

evidence of synovitis . . . with no evidence of joint effusions or warmth" and "tenderness on

palpation of all muscle groups, with no objective evidence of muscle weakness".  Id., p. 202. Dr.

Chadha diagnosed plaintiff with myofascial pain syndrome/fibromyalgia and prescribed Cymbalta. Id., p. 203. In May 2012 Dr. Chadha completed a New York State Teacher's Retirement System medical form, which asked when plaintiff became disabled, whether plaintiff was permanently disabled from the duties of teacher or permanently disabled from all gainful employment, and contained a section to explain his findings. Id., p. 276. Dr. Chadha stated that plaintiff's disability began in September 2011 and referred to his December 7, 2011 report, but provided no further information. Id.

In March 2013 plaintiff was evaluated by Joseph Grisanti, M.D., a rheumatologist, in connection with her application for disability retirement. In his March 19, 2013 report, Dr. Grisanti diagnosed plaintiff with generalized fibromyalgia, but found that she had neither lupus nor chronic fatigue syndrome. Id., p. 282. Although Dr. Grisanti found that plaintiff "demonstrates no objective evidence of being disabled", he explained that "given her dominating fatigability and myofascial pain . . . I can appreciated why [she] has struggled to maintain gainful employment". Id., pp. 282-83. Consequently, Dr. Grisanti determined that plaintiff was "unfit for gainful employment" at that time, and "likely . . . incapable of gainful employment for 9-18 months", depending on certain factors, including being 75 to 80 pounds overweight. Id., p. 283. Dr. Grisanti recognized that "it is not easy to lose 75-80 pounds", but "with a motivated patient and a desire for success", he found that "her prognosis for a full and meaningful life is excellent". Id., p. 284.

Donna Miller, D.O., conducted an internal medicine consultative examination of plaintiff on July 1, 2013. Id., pp. 239-42. Plaintiff informed Dr. Miller that while "Cymbalta initially helped", it no longer "helps too much". Id., p. 239. Her "pain is everywhere". Id. At that time, plaintiff appeared to be in no acute distress and had full flexion, extension, and rotary

movement of her cervical and lumbar spines. Id., pp. 240-41. Likewise, plaintiff had full range of motion in her knees, ankles, shoulders, elbows, forearms and wrists. Id., p. 241. Her strength was 5/5 in the upper and lower extremities, and she displayed no redness, swelling or effusion in her joints, which were "stable and nontender". Id. Dr. Miller diagnosed plaintiff with fibromyalgia and based on her "physical findings", concluded that she "had mild limitation to heavy lifting, bending, and carrying". Id.

After plaintiff's claim for DIB was initially denied (id., pp. 69-71), an administrative hearing was held on March 2, 2015, before Administrative Law Judge Sharon Seeley, at which plaintiff (who was represented by counsel) and a vocational expert testified. Id., pp. 30-57. ALJ Seeley concluded that plaintiff was not disabled from September 8, 2011 through the date of her September 30, 2015 decision. Id., pp. 17-25.

ALJ Seeley found that plaintiff's severe impairments were fibromyalgia and obesity, and that she had the residual functional capacity ("RFC") to perform light work. Id., pp. 19-20. In reaching that determination, she gave "substantial weight" to Dr. Miller's opinion, and gave little weight to the opinions of Drs. Stubenbord, Grisanti and Chadha. Id., pp. 23-24. ALJ Seeley also found that plaintiff's activities of daily living were inconsistent with disabling symptoms, explaining that she was able to drive, go to daily Mass, prepare simple meals, clean, do laundry, and socialize in person and by telephone. Id., p. 24. Although she considered plaintiff's "relatively lengthy work history", ALJ Seeley noted that plaintiff's medication and treatment were inconsistent with the degree of impairment alleged. Id. Specifically, she noted that plaintiff had not followed a number of additional treatment options offered by Dr. Grisanti, and that while she treated with Dr. Stubenbord every six weeks, his records were "very sparse and reflect ongoing discussions but only routine and minimal treatment". Id.

Based on her capacity to perform light work, ALJ Seeley concluded that plaintiff could perform her past relevant work as an elementary school teacher. Id., pp. 24-25. After considering additional materials submitted by plaintiff, the Appeals Council denied her request for review (id., pp. 1-11, 286-88), prompting her to commence this action.

## ANALYSIS

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well-settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. In this case, it is not disputed that: (1) plaintiff is not currently engaged in substantial gainful activity; (2) plaintiff has at least one severe impairment that limits his or her mental or physical ability to do basic work activity; (3) plaintiff's severe impairments do not meet or equal the listings in Appendix 1 of the regulations; and (4) plaintiff cannot perform his or her past work. At issue here is the fifth step: whether plaintiff retains the residual functional capacity to perform work in the national economy. 20 C.F.R. §§404.1520, 416.920. The Acting Commissioner bears the burden of proof on this step. See Talavera v. Astrue, 697 F.3d 145 (2d. Cir. 2012).

**B.    Plaintiff's Arguments**

Plaintiff argues that ALJ Seeley erred in weighing the treating source opinions and her credibility.  Plaintiff's Memorandum of Law [10-1], Points I and II.

**1.    Weighing of the Treating Sources' Opinions**

Plaintiff argues that ALJ Seeley erred by not giving controlling weight to her treating sources - Drs. Stubenbord, Grisanti and Chadha.  Plaintiff's Memorandum of Law [10-1], Point I.  "Although the conclusions of a consultative examiner may override those of a treating source . . . an ALJ should use care before relying too heavily on the findings of a one-time consultant".  Morales v. Berryhill, 2018 WL 679566, *16 (S.D.N.Y.), adopted sub nom., 2018 WL 679492 (S.D.N.Y. 2018); Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("caution[ing] that ALJs should not rely heavily on the findings of consultative physicians after a single examination"). Nevertheless, "internal inconsistencies, and the conflicting opinions of other examining physicians, where supported by evidence in the record, can constitute substantial evidence to support not according the treating physician's opinion controlling weight, as well as good reasons to attribute only limited weight to that opinion." Tricarico v. Colvin, 681 Fed. App'x 98, 101 (2d Cir. 2017) (Summary Order); Caruso v. Colvin, 2016 WL 1170909, *2 (D. Conn. 2016) ("an ALJ is not inextricably bound to the opinion of a treating physician and may deviate from such opinion - and accord more weight to a non-treating physician - if, among other things, the opinion is not consistent with other, substantial evidence of record").

Where an ALJ declines to give controlling weight to a treating physician's opinion, he must provide "good reasons" for doing so, and must consider the following factors in determining the weight to afford to the opinion: the nature of the examining relationship;

whether or not the medical opinion was made by a treating source; the length of treatment relationship and the frequency of examination; supportability; consistency; specialization; and any other factors "which tend to support or contradict the opinion". 20 C.F.R. §404.1527(c).

ALJ Seeley gave several reasons why she afforded Dr. Stubenbord's opinion "little weight". First, she explained that whereas Dr. Stubenbord opined in April 2012 that plaintiff's disability began due to lupus, Dr. Chadha "specifically expressed that [plaintiff] could not have lupus based on laboratory testing and [plaintiff's] symptomology". [5], p. 23.[3] She further explained that "[a]ccording to Dr. Stubenbord, 'some of her medical problems cannot be assessed by clinical means' . . . . [H]is belief that the claimant is unable to perform any job is unsupported. To the extent that he believes the claimant is 'psychologically' unable to work, his opinion is vague, unexplained and inconsistent with the claimant's lack of mental health treatment. Moreover, his opinions do not specific (*sic*) functional limitations and instead address only an issue reserved to the Commissioner". Id.

While I find that ALJ Seeley gave good reasons for rejecting Dr. Stubenbord's opinion concerning plaintiff's psychological impairments, she offered scant explanation as to why she gave little weight to the remainder of his opinion concerning plaintiff's physical limitations, other than stating that Dr. Stubenbord's disability opinion addressed an issue reserved for the Commissioner.

As the Acting Commissioner argues (Acting Commissioner's Brief [12-1], p. 12 of 19), "a statement or opinion that a claimant is totally or partially 'disabled' or is under a 'disability', even from an acceptable medical source such as a treating physician, is not entitled to any particular weight." Shamburger v. Colvin, 2017 WL 4003032, *3 (W.D.N.Y. 2017).

---

[3]      The significance of this is minimal, since Dr. Stubenbord's subsequent September 2013 and December 2014 opinions did not include a diagnosis of lupus. [5], pp. 251.

However, "even where a treating source expresses an opinion on an issue reserved to the Commissioner, such as whether a claimant is 'disabled,' the ALJ cannot simply ignore or disregard the treating source's opinion." Goble v. Colvin, 2016 WL 3179901, *5 (W.D.N.Y. 2016). "For treating sources, the rules . . . require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us". Social Security Ruling ("SSR") 96-5P, 1996 WL 374183, *2-3.

That is especially so here, where every medical source agrees that plaintiff suffers from fibromyalgia. "[F]ibromyalgia is a disease that eludes objective measurement." Grenier v. Colvin, 2014 WL 3509832, *3 (N.D.N.Y. 2014). "Unlike other medical conditions . . . standard clinical tests are 'not highly relevant' in . . . assessing fibromyalgia or its severity." Hawk v. Astrue, 2012 WL 3044291, *3 (N.D. Ohio 2012). "In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions". Green-Younger v. Barnhart, 335 F.3d 99, 108-09 (2d Cir. 2003). Nevertheless, even where the pain is not corroborated by objective medical findings, "[p]ain itself may be so great as to merit a conclusion of disability where a medically ascertained impairment is found". Rivera v. Schweiker, 717 F.2d 719, 724 (2d Cir. 1983).

Because of the difficulties in evaluating the limitations associated with fibromyalgia, "SSR 12–2p specifically recognized the importance of relying on the opinion of a medical provider . . . since a treating source would have the longitudinal picture of a claimant's impairments, especially given the fact that fibromyalgia often involves varying signs and symptoms." Cabibi v. Colvin, 50 F. Supp. 3d 213, 235 (E.D.N.Y. 2014); Maldonado v. Berryhill,

-8-

2017 WL 946329, *23 (S.D.N.Y. 2017) ("where the claimant alleges fibromyalgia, 'longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment' SSR 12-2p, 2012 WL 3104869, at *3."). Thus, Dr. Stubenbord's opinion, as the only treating source, had particular importance. Since ALJ Seeley gave little weight to Dr. Stubenbord's repeated opinions that plaintiff was disabled from her fibromyalgia (an opinion shared by Drs. Grisanti and Chadha, both rheumatologists) without further evaluation, I conclude that she erred. *See* Goble, 2016 WL 3179901 at *5; Lackner v. Astrue, 2011 WL 2470496, *4 (N.D.N.Y.), adopted, 2011 WL 2457852 (N.D.N.Y. 2011) (remanding for "the ALJ to request an opinion from [the treating physician] regarding Plaintiff's ability to function despite her impairments, as well as to clarify the bases for his opinion that Plaintiff was disabled"); Smith v. Astrue, 2011 WL 5026218, *15 (N.D. Fla.), adopted, 2011 WL 5026212 (N.D. Fla. 2011) ("[t]he ALJ had the duty to discuss and evaluate the opinion of [the treating physician] in light of all of the evidence, not discard it because it treaded upon an ultimate issue reserved to the Commissioner" and "should have prompted further inquiry by the ALJ"); Peterson v. Berryhill, 2017 WL 1011470, *4 (E.D.N.C.), adopted, 2017 WL 1014350 (E.D.N.C. 2017) ("[w]hile [opinions on issues reserved to the Commissioner] are not entitled to controlling weight or special significance under the regulations, the ALJ is required to consider the opinions and to make reasonable efforts to follow up with the treating physician if the bases for such opinions are not clear").

Although plaintiff characterizes Drs. Grisanti and Chadha as treating physicians (plaintiff's Memorandum of Law [10-1], pp. 6-10), there is no indication that either doctor treated plaintiff on more than one occasion. Therefore, as the Acting Commissioner argues (Acting Commissioner's Brief [12-1], p. 12 of 19), they cannot be considered treating sources,

*see* Barber v. Commissioner of Social Security, 2016 WL 4411337, *6 (N.D.N.Y.), adopted, 2016 WL 4402033 (N.D.N.Y. 2016), and "[t]here is no such requirement to provide good reasons for the weight afforded to" their opinions. Fabian v. Colvin, 2015 WL 792065, *7 (N.D.N.Y. 2015).


      **2.**      **Credibility Determination**

      Plaintiff argues that ALJ Seeley erred by "not taking account" of her extensive work history in assessing her credibility. Plaintiff's Memorandum of Law [10-1], p. 11. The Acting Commissioner responds that plaintiff "is mistaken, as the ALJ specifically discussed her 'relatively lengthy history as a teacher' but found that factor outweighed . . . by the other factors she considered". Acting Commissioner's Brief [12-1], pp. 16-17 of 19. I agree with the Acting Commissioner. *See* [5], p. 24. Therefore, I recommend that this ground for remand be denied.


<strong>CONCLUSION</strong>

      For these reasons, I recommend that plaintiff's motion for judgment on the pleadings [10] be granted to the extent that this case be remanded to the Acting Commissioner for further proceedings consistent with this Report and Recommendation, and that the Acting Commissioner's motion for judgment on the pleadings [12] be denied. Unless otherwise ordered by Judge Vilardo any objections to this Report and Recommendation must be filed with the clerk of this court by June 14, 2018. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

-10-

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: May 31, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge